UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| PETER S. HARMER, *et ux*, | ) | |
|---|---|---|
| CHRISTINE C. HARMER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 3:13-cv-00286 |
| v. | ) | |
| | ) | Judge Sharp |
| WILBUR O. COLOM and | ) | Magistrate Judge Knowles |
| THE COLOM LAW FIRM, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Defendants Wilbur O. Colom ("Colom") and The Colom Law Firm, LLC ("Defendants") filed a *Motion to Dismiss Plaintiffs' Amended Complaint* (Docket Entry No. 63), to which Plaintiffs Peter S. Harmer and wife, Christine C. Harmer ("Plaintiffs") filed a response (Docket Entry No. 69).[1] For the reasons discussed herein, the Court will grant Defendants' motion.

## RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiffs Peter ("Harmer") and Christine Harmer ("C. Harmer") are resident citizens of Franklin, Tennessee. Wilbur Colom ("Colom") is a Mississippi attorney and the Colom Law Firm is a small firm of three attorneys located in Columbus, Mississippi ("Defendants"). The instant lawsuit and Plaintiffs' allegations arise from Defendants' representation of an individual, Donald DePriest ("DePriest"), in a lawsuit he brought against Harmer.

---

[1] In the response memorandum, Plaintiffs refer the Court also to their previously filed briefs entered at Docket Entry Numbers 12, 13, 30 and 41 for support in opposition.

1

On December 21, 2005, DePriest was publicly nominated, by the President of the United States, to serve as a member on the Board of the Tennessee Valley Authority ("TVA").[2] While on the TVA Board, from March 3, 2006 through April 10, 2009, DePriest served on the TVA Board Audit & Ethics Committee. Over the next few years, numerous lawsuits were filed against DePriest along with publically filed liens by the Internal Revenue Service for non-payment of withholding taxes. On April 10, 2009, DePriest resigned, mid-term, from the TVA Board.

On May 12, 2010, Harmer furnished to Jimmy Stobaugh ("Stobaugh"), at Telesaurus Holdings, a competitor of Maritime Communications/Land Mobile, LLC ("Maritime")(a DePriest related company),[3] a number of publicly accessible records from the Federal Communications Commission ("FCC")'s investigation of Maritime's participation in August 2005 FCC License's Auction. The documents provided by Harmer to Stobaugh evidenced efforts by DePriest in September 2007 to redeem a counterfeit bearer bond in the amount of $25,000,000 purportedly issued by Banco Central de Venezuela. The documents indicated the attempt to redeem the counterfeit bearer bond less than two years after DePriest was sworn in as a TVA Board member and was serving on the TVA Board Audit and Ethics Committee.

FCC initiated a public investigation, by formal proceedings, against Maritime relating to false statements to the United States Government in Maritime's acquisition of license at a 2005 auction by which the FCC granted certain licenses. As part of the public record created by the FCC Maritime Investigation, DePriest was revealed to have personally guaranteed a loan, in the

---

[2] Unless otherwise noted, the allegations are drawn from Plaintiffs' Amended Complaint (Docket Entry No. 32).

[3] Maritime is a company ostensibly owned by DePriest's wife but, in actuality, is controlled by and exists for the benefit of DePriest.

amount of $200,000, at a 25% annum interest rate, due and payable September 26, 2009 to Sextons, Inc. On November 14, 2011, Sextons, Inc. publicly filed suit against DePriest in the United States District Court for the Northern District of Mississippi (Docket No. 1:11-CV-238-AS) claiming breach of contract ("Sextons Lawsuit"). The Sextons Lawsuit resulted in a publicly-entered judgment against DePriest in the amount of $445,771.21, on August 27, 2012.

On July 16, 2010, DePriest, by and through his counsel, Defendants, initiated litigation against Harmer for defamation, tortious interference with business relationships, and intentional infliction of emotional distress in the United States District Court for the Northern District of Mississippi ("Mississippi Litigation").[4] Before preparing and filing the suit, in July 2010, Defendants wrote a letter, sent by email and by Federal Express, received by Harmer in Franklin, Tennessee, making unsubstantiated accusations against Harmer for making false statements about DePriest. The June 16, 2010 letter included the following concluding paragraph:

> Mr. ... DePriest demands that you retract the statements you made to Scott Baker, the Knoxville News Sentinel, the Nashville Tennessean, any courts of law, and all other organizations and individuals, and have copies of these retractions delivered to ... DePriest. Mr. ... DePriest also demands that you cease and desist from any further attempts to injure or interfere with his business or personal reputation. This is your opportunity to resolve the matter without legal expense and exposure to liability and damages. If you fail to respond to this demand, Mr. ... DePriest will commence legal proceedings against you.
>
> Very Truly Yours,
> The Colom Law Firm, LLC
>
> By: /s/_____
> Wilbur O. Colom

---

[4] The case is styled *Donald R. DePriest v. Peter S. Harmer and Does 1-10*, 1:10CV177-P-D. Generally, DePriest claimed that in June 2005, Harmer requested that DePriest aid him in committing fraud upon the court. Harmer wanted DePriest to state that he held stock in a corporation of which DePriest was chairman, so the sale of the stock could be part of his bankruptcy reorganization. DePriest refused. Since DePriest refused to participate in the fraud, Harmer allegedly embarked on a malicious campaign to interfere with DePriest's business and harm his reputation. *See* (Docket Entry No. 66-1, DePriest Complaint at ¶¶ 14-15).

Harmer did not respond to the letter. The lawsuit was filed ten days later on July 16, 2010. Harmer had no money to retain counsel to represent him. Believing that he had no money to retain counsel to defend the claims stated in the lawsuit, Defendants maliciously drafted and filed the Complaint with the intent of forcing Harmer to "capitulate to the demand of [DePriest] to cease and desist speaking the truth about [him]." (Amed. Compl. at ¶ 140). Furthermore, because Harmer had no money with which to retain counsel, his options were to proceed with a *pro se* defense or "to capitulate to Mr. Colom's use of the perversely served MS District Court order (summons) as a Damocles sword." (*Id*. at ¶ 141). Harmer filed motions to dismiss the lawsuit, responded to interrogatories, served interrogatories and other pretrial discovery and, otherwise, attempted to defend the claims.

On June 1, 2011, Colom placed a telephone call to Harmer, which was received in Franklin, Tennessee and was recorded. During the recorded conversation, Colom stated to Harmer that DePriest only desires for Harmer to leave him alone and that DePriest knows that Harmer "can't unring any bell that's rung" but DePriest "doesn't want any more bells rung." (Amed. Compl. at ¶ 144). During the same conversation, Colom advised Harmer that DePriest did not want him saying anything else to anybody that would hurt DePriest's business. Colom further stated that he was going to call DePriest and advise him that he needed to get another lawyer to keep pressing the claims against Harmer because DePriest was "not ever gonna collect any money from you [Mr. Harmer]" and "you're [Mr. Harmer] not ever gonna collect any money from him unless something fortunate happens." (*Id*. at ¶ 146).

On June 15, 2011, the Mississippi District Court, in DePriest's lawsuit, *sua sponte*, entered what was entitled "Order Staying Case Until The Conclusion Of The Investigation By The Federal Communications Commission Of Maritime Communications/Land Mobile LLC, EB

Docket NO. 11-71:FCC 11-64" ("Stay Order"). On June 15, 2011, DePriest left a voicemail message recorded as follows:

> Hey Peter [Harmer], its Don [DePriest]. 662-425-3167. I'm out of the country where you've probably been any number of times, including prep school. So just called, Will [Colom] had suggested that we have a chat and see if we could get together. Thanks.

On August 21, 2012, Harmer, *pro se*, filed a motion to lift the Stay Order. On August 30, 2012, Colom telephoned Harmer offering to dismiss DePriest's lawsuit, without prejudice. In response to the offer to dismiss, Harmer informed Colom that he had to think about that offer.[5] On August 31, 2012, at 3:57 p.m., CDT, Colom emailed Harmer in Williamson County, Tennessee, reading as follows:

> I just had a discussion with Don [DePriest]. He will agree to dismissal with prejudice with the understand (sic) that neither you nor him (sic) will make any public statement about the dismissal and you will not disclose the dismissal to any third party who will then make a public statement. Of course, we can't prevent people from looking at public files but you will not call it to anyone's attention.

On September 5, 2012, at 11:21 a.m., CDT, Harmer emailed Colom stating as follows:

> Thank you for your telephone call last Thursday evening and subsequent email on Friday concerning the below attached.
>
> It is with respect that I reject the dismissal settlement agreement.

(Amed. Compl. at ¶¶ 155-156).

On September 6, 2012, Colom and The Colom Firm, for DePriest, filed a motion to dismiss the lawsuit without prejudice. Before Harmer received a copy of the motion, the Mississippi District Court granted the unilateral motion and entered a judgment dismissing DePriest's lawsuit.

---

[5] The reason Harmer had to think about Colom's "without prejudice" offer stemmed from the fact that a "without prejudice" offer to dismiss "would illusory [sic], especially in light of the trauma to Harmer from spending two (2) years, for no reason other than the Perverse Process, subject to the coercive plenary jurisdiction of the MS District Court." (*Id.* at ¶ 154).

# ANALYSIS

Plaintiffs brought this action against Defendants claiming "abuse of process and malicious prosecution were successfully used to intentionally inflict emotional distress aimed at coercing Harmer, by threat of a $40,000,000 judgment, to cease exercising [his] First Amendment rights to free speech, particularly his right to inform official governmental agencies about Defendants' client." (Docket Entry No. 72 at 1). Defendants filed a Motion to Dismiss contending the Court does not have personal jurisdiction over Defendants, a Mississippi resident and Mississippi limited liability company, and alternatively, Plaintiffs have failed to state a cause of action for which relief may be granted.[6]

## I. Standard of Review

In the context of a Rule 12(b)(2) motion based on lack of personal jurisdiction, the plaintiff bears the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)). A district court may address such a motion on the parties' submissions or it may permit limited discovery and hold an evidentiary hearing. *Id.* When, as here, the Court does not conduct an evidentiary hearing and relies solely on written submissions and affidavits to resolve the Rule 12(b)(2) motion, "the plaintiff need only make a prima facie showing of jurisdiction. In this situation, [the Court] will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and [it] will construe the facts in a light most favorable to the nonmoving party." *Indah v. S.E.C.,* 661 F.3d 914, 920 (6th Cir. 2011) (internal citations and quotations omitted). Because the Court relies solely on the written submissions and affidavits to resolve the jurisdictional issue, the burden on

---

[6] The Court will rule in favor of Defendants on the issue of personal jurisdiction, and therefore, will not conduct an analysis as to the failure to state a claim argument.

Plaintiffs is "relatively slight." *See Air Prods.,* 503 F.3d at 549 (citing *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988)).

In diversity cases, federal courts apply the law of the forum state, subject to constitutional limitations, to determine whether personal jurisdiction exists. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.,* 138 F.3d 624, 627 (6th Cir.1998); *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir. 1994). Thus, a court must look not only to the forum state's long-arm statute, but also to the due process requirements of the United States Constitution. *Aristech,* 138 F.3d at 627; *Reynolds,* 23 F.3d at 1115. Tennessee's long-arm statute, Tenn.Code Ann. § 20–2–214, expands the jurisdiction of Tennessee courts to the full limit permitted by due process. *Gordon v. Greenview Hosp., Inc.,* 300 S.W.3d 635, 645 (Tenn. 2009). When a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge, and the Court need only determine whether the exercise of personal jurisdiction violates constitutional due process. *Aristech,* 138 F.3d at 627.

"Due process requires that a defendant have minimum contacts ... with the forum State ... such that he should reasonably anticipate being haled into court there." *Schneider v. Hardesty,* 669 F.3d 693, 701 (6th Cir. 2012) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 297 (1980)). This requirement ensures that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Schneider,* 669 F.3d at 701. Depending on the type of minimum contacts in a case, personal jurisdiction can take one of two forms, general or specific. *Air Prods.,* 503 F.3d at 550.

## II. Application of Law

### A. General Jurisdiction

The Court first considers whether due process permits the imposition of general jurisdiction under the facts of this case. "General jurisdiction exists when a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Harris,* 281 Fed. Appx. at 492. The Amended Complaint in this case does not allege Defendants maintain an office in Tennessee, are registered to do business in Tennessee, have employees in Tennessee, nor own property in Tennessee – and such lack thereof would not support the notion of a "continuous and systematic nature" with the state. Rather, the Amended Complaint focuses on Defendants involvement in the underlying litigation in Mississippi, and alleges Defendants availed themselves of the privilege of acting in Tennessee during that litigation by engaging Plaintiff during the litigation while he was a resident of Tennessee.

Moreover, Plaintiffs appear to argue that Tennessee is more convenient for them and was incredibly inopportune to litigate the prior case in Mississippi.[7] Although unfortunate for Harmer, it is not the position of the Court to consider any such matters that occurred in the previous litigation. Furthermore, due process requires the Court to consider the appropriateness of its jurisdiction over *Defendants*, not whether Plaintiffs would be inconvenienced by pursuing this action elsewhere. *Schneider*, 669 F.3d at 701. Plaintiffs have not established any contacts with Tennessee that would subject Defendants to Tennessee's general jurisdiction.

---

[7] In support, Plaintiffs make the following argument: "Plaintiff had no contact with Mississippi. All (as in 100%) of the acts/omissions alleged against Plaintiff occurred in places other than Mississippi. Yet, Defendants haled Plaintiff P. Harmer into court in Mississippi, a state with which Plaintiff P. Harmer had never had any contact of any kind, save one very brief drive that had absolutely nothing to do with this case. Indeed, Defendants, illustratively speaking, launched a harpoon from Mississippi into Tennessee and forcefully reeled Plaintiff P. Harmer into Mississippi from Tennessee." (Docket Entry No. 69 at 3).

### B. Specific Jurisdiction

The Court now turns to specific personal jurisdiction. As noted, Plaintiff's sole showing in favor of personal jurisdiction involves Defendants' actions during the Mississippi litigation.

"Specific jurisdiction is confined to the adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Indah,* 661 F.3d at 920 (quoting *Goodyear Dunlop Tires Organization v. Brown,* ⎯⎯ U.S. ⎯⎯, ⎯⎯, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)). That is, specific jurisdiction "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 149 (6th Cir. 1997) (citing *Helicopteros Nacionales de Colombia S.A., v. Hall,* 466 U.S. 408, 414–415 & nn. 8–10, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). The United States Court of Appeals for the Sixth Circuit has developed three criteria for determining whether specific jurisdiction exists over a particular defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968). Thus, for the exercise of specific personal jurisdiction to be appropriate, Defendants must have purposefully availed themselves of the privilege of acting or causing a consequence in Tennessee, the cause of action must arise from Defendants' activities in Tennessee, and Defendants' acts or the consequences of their acts must have a substantial enough connection with Tennessee to make the exercise of personal jurisdiction reasonable. *Mohasco,* 401 F.2d at 381.

Plaintiffs allege that because Harmer was served with process in Tennessee in the prior Mississippi litigation, that this subjects Defendants to the personal jurisdiction of this Court. Furthermore, Plaintiffs add that the communication between the parties also justifies personal jurisdiction of Defendants. More specifically, Plaintiffs aver,

> … there are the telephone calls and emails into Williamson County, Tennessee [] from Defendants [] to [] Harmer, explicitly seeking from [] Harmer an agreement to remain silent about the client and the lawsuit accompany the perversely obtained process in return for Defendants [] removing the coercive force of the perversely obtained process. [*sic*].
>
> … it would be hard to conceive of circumstances less likely to be classified as fortuitous, happenstance or isolated. Defendants [] acted purposefully with a well-thought-out plan to inflict a grave threat and massive hardship on [] Harmer for a prolonged period.
>
> Everything in the Complaint, [], states to be fact about Defendants [] speaks of torts which Defendants [] came (through their agent, the process server) to the Middle District of Tennessee to effectuate. On principle, this is more than merely engaging in tortious contact outside Tennessee to cause a consequence in Tennessee.
>
> But, causing consequences in Tennessee could not have been more deliberately designed, if stood on the Mississippi side of the boundary and fired a projectile into [] Harmer in Tennessee.
>
> Defendants [] planned the ultimate consequence to occur in the Middle District of Tennessee with a plethora of consequences in the Middle District of Tennessee between the personal service and the attempt to accomplish ultimate consequence.

(Docket Entry No. 13 at 10).

Defendants respond that Plaintiffs have failed to meet the burden of establishing that personal jurisdiction over Defendants is proper. More specifically, Defendants purport,

> At best, Plaintiffs have pled five communications that were initiated in Mississippi but received in Tennessee, which Defendants were required to undertake at the direction and instruction of their client, not of their own volition.

***

> Of the 169 separately numbered paragraphs in Plaintiffs' Amended Complaint, only six relate to the State of Tennessee in any way:
>
> 1. Mr. and Mrs. Harmer are currently residents of Franklin, Williamson County, Tennessee. [Am. Compl., ¶¶ 1-2].
>
> 2. On June 16, 2010, attorney William Colom, acting on behalf of DePriest, sent a demand letter to Harmer which he received at his residence in Tennessee. [Am. Compl., ¶¶133-134].
>
> 3. After filing the Mississippi litigation on July 16, 2010, a process server served Harmer at his residence. [Am. Compl., ¶131].
>
> 4. On June 1, 2011, attorney William Colom, acting on behalf of DePriest, called Harmer, which Harmer answered while he was in the State of Tennessee.
>
> 5. On August 30, 2012, attorney William Colom, acting on behalf of DePriest, called Harmer while Harmer was in Tennessee. [Am. Compl., ¶151].
>
> 6. On August 31, 2012, attorney William Colom, acting on behalf of DePriest, drafted an email to Harmer which Harmer opened and responded to while he was in Tennessee. [Am. Compl., ¶¶155-156].
>
> Plaintiffs allege that because Mr. Harmer was served with service of process in Tennessee, that this action subjects Defendants to the personal jurisdiction of this Court through purposeful availment. However, the summons was issued by the United States District Court for the Northern District of Mississippi for a lawsuit filed in that court. Further, for purposes of commencing and prosecuting the Mississippi litigation, Defendants did not purposely avail themselves of the privileges and protection of Tennessee law.

(Docket Entry No. 66 at 7-8).

*i. Purposeful Availment*

Plaintiffs fail on the first prong of the three-part test to establish specific personal jurisdiction: that "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Mohasco*, 401 F.2d at 381. Purposeful availment is "something akin to a deliberate undertaking," that is, a deliberate effort by the defendant to direct its activities toward, and to make contact with, the forum. *Bridgeport Music, Inc. v. Still N The Water Pub.,* 327 F.3d 472, 478 (6th Cir. 2003). Purposeful availment exists

"when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.* (internal quotation omitted).

Plaintiffs' availment argument boils down to a handful of communications and the service of a summons in the Mississippi litigation. These communications were a cease and desist letter, two telephone calls, and an email exchange between Harmer and Colom. Although telephone calls or emails may serve as the basis for personal jurisdiction in certain circumstances, those communications must "form the bases for the action." *Intera Corp. v. Henderson,* 428 F.3d 605, 616 (6th Cir. 2005); *Neal v. Janssen,* 270 F.3d 328, 332 (6th Cir. 2001). Furthermore, the remaining allegation on which Plaintiffs appear to base jurisdiction is the service of process obtained by a process server in Tennessee, where Harmer lived while the Mississippi action was ongoing. It appears to the Court from these allegations that the nature of any contact Defendants had regarding these communications was based purely on the fact that Harmer happened to live in Tennessee at the time of the Mississippi litigation. This is simply insufficient to establish personal jurisdiction. Consequently, the first prong of the *Mohasco* test has not been met.

*ii. "Arising From"*

A cause of action "arises from" the defendant's contacts with the forum state when the cause of action has a "substantial connection" to the defendant's forum state activities, that is, "where a defendant's contacts with the forum state are related to the operative facts of the controversy." *Tharo Systems, Inc. v. Cab Produkttechnik GMBH & Co. KG,* 196 Fed. Appx. 366, 371 (6th Cir. 2006). As discussed *in supra*, Defendants could not reasonably anticipate

being haled into court in Tennessee to defend a lawsuit based on these few minimal contacts with the State. Therefore, the second prong of the test has not been satisfied.

### *iii. Reasonableness*

If a court determines specific jurisdiction is proper under the first two prongs – which the Court has not done here – it then must decide whether imposition of personal jurisdiction is reasonable. *Mohasco*, 401 F.2d at 381. The third prong of the test mandates that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Youn v. Track, Inc.,* 324 F.3d 409, 419 (6th Cir. 2003) (citation omitted). Generally, when considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including the following: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996). Defendants are residents (and a limited liability company) of Mississippi and would be substantially burdened if they were compelled to litigate this case in Tennessee given the fact that neither resides in the State. Further, although Plaintiffs' interest in obtaining relief is important, there is no reason to suppose such relief could not be had in a Mississippi court. Moreover, since events surrounding the Mississippi lawsuit are the crux of Plaintiffs' request for relief, it appears that the state of Mississippi may have a strong interest in resolving this controversy. Accordingly, the third prong of the specific jurisdiction test has not been satisfied.

The Court finds that due process does not permit the imposition of personal jurisdiction under the facts of this case. *Schneider*, 669 F.3d at 701. Consequently, Plaintiffs have not met

their burden of establishing personal jurisdiction in Tennessee. Therefore, the claims against Defendants will be dismissed without prejudice.

## **CONCLUSION**

For all of the reasons stated, Defendants' *Motion to Dismiss Plaintiffs' Amended Complaint* (Docket Entry No. 63) will be granted, and this case will be dismissed.

An appropriate Order will be entered.

*/s/ Kevin H. Sharp*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE